The BLAND INDEPENDENT SCHOOL DISTRICT, Board of Trustees of the Bland Independent School District, and Larry Johnson, Superintendent of the Bland Independent School District, Appellants,

v.

Douglas BLUE and Carolyn Blue, Appellees.

No. 05–98–01133–CV.

Court of Appeals of Texas, Dallas.

March 26, 1999.

Robert L. Scott, Greenville, John A. Mackintosh, Jr., G. Luke Ashley, Anna Marple Duboise, Thompson & Knight, Dallas, for appellants.

Mark Heidenheimer, McKinney, for appellees.

Before Justices CHAPMAN,[1] JAMES, and MOSELEY.

1. Justice Ron Chapman was a member of the panel at the time this case was argued and submitted for decision. Justice Chapman retired from the Court on December 31, 1998. Therefore, he did not participate in the issuance of this opinion.

2. See TEX.R.APP. P. 19.1.

## OPINION

JIM MOSELEY, Justice.

On the Court's own motion, we withdraw our opinion of January 26, 1999 and substitute the following opinion in its place. We also vacate our previous judgment.[2]

In this interlocutory appeal, the Bland Independent School District (BISD), the Board of Trustees of the Bland Independent School District (the Board),[3] and Larry Johnson, Superintendent of the Bland Independent School District, appeal the trial court's denial of their plea to the jurisdiction.[4] BISD, the Board, and Johnson sought dismissal of an application for permanent injunction filed by Douglas and Carolyn Blue on the ground the trial court lacked subject matter jurisdiction over the Blues' claims. In two points of error, BISD, the Board, and Johnson claim the trial court erred in denying its plea to the jurisdiction because the Blues lacked standing to pursue injunctive relief. For the reasons set forth below, we dismiss the interlocutory appeal brought by Johnson for lack of jurisdiction and affirm the trial court's order denying BISD and the Board's plea to the jurisdiction.

## BACKGROUND

In August 1996, BISD entered into a lease-purchase agreement with Citicorp, Inc. to finance the purchase and installation of a pre-engineered metal building and furnishings to serve as the new Bland High School. Under the terms of the lease-purchase agreement, BISD leases the school building and furnishings from Citicorp, with an option to purchase at the end of the lease term. The lease-purchase agreement provides that BISD is to make payments twice a year through the year 2011 unless the agreement is otherwise terminated pursuant to its terms. The Bland High School opened for classes in August 1997.

3. The Blues did not sue the individual trustees.

4. BISD, the Board, and Johnson filed a plea to the jurisdiction, a plea in bar, and a motion to dismiss for want of jurisdiction. For simplicity, we will refer to these motions collectively as the "plea to the jurisdiction."

In March 1998, the Blues sought to permanently enjoin BISD, the Board, and Johnson from making future payments to Citicorp under the lease-purchase agreement. The Blues allege BISD entered into an illegal contract for the purchase or acquisition of real property or an improvement to real property because BISD did not comply with the public notice requirements contained in section 271.004 of the Texas Local Government Code.[5] The Blues further assert they (1) are taxpayers of BISD and (2) will be irreparably harmed by the continued illegal expenditure of public funds.

BISD, the Board, and Johnson jointly filed a plea to the jurisdiction asserting the trial court lacked subject matter jurisdiction over the Blues' claims. Specifically, BISD, the Board, and Johnson claimed the Blues lacked standing to complain about the lease-purchase agreement because BISD uses state tax revenues, not school district tax revenues, to meet its obligation to Citicorp; therefore, the Blues did not have a justiciable interest in the subject matter of the lawsuit. They also asserted that because BISD had already purchased and installed the building, paid the contractor, and opened the high school, there was no longer any justiciable controversy between the parties.

The trial court held a hearing on the plea to the jurisdiction. At the hearing, Johnson testified that local taxpayer funds were used for all items on the building other than those expressly covered by the lease-purchase agreement. Johnson stated payments on the lease-purchase agreement were made from "tier II" funds received from the State of Texas, not from local school district taxpayer funds. The Blues did not cross examine Johnson or call any witnesses at the hearing. Instead, the Blues argued that in determining the plea to the jurisdiction, the trial court was limited to considering the allegations in their pleadings. Alternatively, the Blues asserted they were entitled to amend their pleadings to allege jurisdictional facts before the trial court dismissed their action for want of jurisdiction.

The trial court granted in part and denied in part the plea to the jurisdiction and motion to dismiss filed by BISD, the Board, and Johnson. To the extent the Blues complained about lease payments covering personal property purchased for the school, the trial court dismissed those claims because a school district may contract for the purchase of personal property without providing notice to the public.[6] However, the trial court denied the plea to the jurisdiction with respect to the Blues' claims that the lease-purchase agreement was illegal to the extent it covered the purchase of the school building itself. This interlocutory appeal followed.

## APPELLATE JURISDICTION OVER INTERLOCUTORY APPEAL

■ Initially, we must address the issue of our jurisdiction over this interlocutory appeal. Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code provides that an appeal may be taken from an interlocutory order that grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in section 101.001 of the civil practice and remedies code.[7] Section 101.001(3) defines the term "governmental unit" as:

(A) this State and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;

(B) a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority;

---

5. See TEX. LOCAL GOV'T CODE ANN. § 271.004 (Vernon Pamph.1999).

6. See id. § 271.005.

7. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.1999).

(C) an emergency service organization; and

(D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.[8]

The statutory definition, however, does not include employees or officials of governmental units.[9] We strictly construe statutes authorizing interlocutory appeals.[10]

■ We conclude we have jurisdiction over the interlocutory appeal brought by BISD and the Board under the definition of "governmental unit" provided in section 101.001(3). However, strictly construing section 101.001(3), we conclude Johnson is not a "governmental unit" as that term is defined.[11] Therefore, we do not have jurisdiction over Johnson's interlocutory appeal under section 51.014(a)(8). Accordingly, we dismiss Johnson's interlocutory appeal for want of jurisdiction.[12]

## SUBJECT MATTER JURISDICTION

### A. Applicable Law

■ Subject matter jurisdiction is an essential requirement to the authority of a court to decide a case.[13] It concerns the power of a court to hear and determine a particular category of cases.[14] If a trial court does not have subject matter jurisdiction, any order or judgment rendered by the court is void, rather than voidable.[15] However, once subject matter jurisdiction is properly acquired by a court, no later fact or event can defeat jurisdiction.[16]

■ Standing is a component of subject matter jurisdiction.[17] The question of standing addresses whether a litigant is the proper party to bring the lawsuit.[18] Generally, to establish standing, a party must show: (1) a real, justiciable controversy exists between the parties, and (2) the controversy will actually be determined by the relief sought.[19] Standing also requires the party bringing suit to have a peculiar interest in the subject matter of the suit not shared by the general public.[20] In Texas, taxpayers have standing to bring a suit in equity to enjoin public officials from expending funds under a void, illegal, or unconstitutional contract.[21]

### B. Plea to the Jurisdiction

■ A plea to the jurisdiction is the vehicle by which a party contests the trial court's authority to determine the subject matter of the cause of action.[22] It is a dilatory plea whose purpose is to defeat the cause of action without defeating the merits of the

---

8. TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3) (Vernon Supp.1999).

9. *See id.; Johnson v. Resendez,* No. 05–98–00798–CV, slip op. at 7, 1999 WL 161019 (Tex. App.—Dallas March 25, 1999, no pet. h.).

10. *Johnson,* slip op. at 8; *America Online, Inc. v. Williams,* 958 S.W.2d 268, 271 (Tex.App.—Houston [14th Dist.] 1997, no pet.).

11. *See Johnson,* slip op. at 8–9.

12. *See id.*

13. *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 443 (Tex.1993).

14. *Id.* at 440.

15. *Mapco v. Forrest,* 795 S.W.2d 700, 703 (Tex. 1990) (orig.proceeding).

16. *See Continental Coffee Prods., Co. v. Cazarez,* 937 S.W.2d 444, 449 (Tex.1996).

17. *Texas Ass'n of Bus.,* 852 S.W.2d at 443.

18. *Dresser Indus., Inc. v. Snell,* 847 S.W.2d 367, 375 (Tex.App.—El Paso 1993, no writ).

19. *See Nootsie Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 662 (Tex.1996); *State Bar of Tex. v. Gomez,* 891 S.W.2d 243, 245 (Tex. 1994); *Texas Ass'n of Bus,* 852 S.W.2d at 446.

20. *See Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex. 1984).

21. *Zimmelman v. Harris County,* 819 S.W.2d 178, 182 (Tex.App.—Houston [1st Dist.] 1991, no writ); *First Nat'l Bank v. Prudential Ins. Co.,* 551 S.W.2d 112, 113 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.).

22. *State v. Benavides,* 772 S.W.2d 271, 273 (Tex. App.—Corpus Christi 1989, writ denied).

case.[23] The plaintiff bears the burden of alleging facts that affirmatively show the trial court has subject matter jurisdiction.[24] Because the question of subject matter jurisdiction is a legal question, we review the trial court's ruling on a plea to the jurisdiction under a *de novo* standard of review.[25]

When deciding a plea to the jurisdiction, the general rule is the trial court must look to the allegations in the petition and must accept those allegations as true.[26] The trial court does not look at the merits of the case.[27] If the petition fails to allege jurisdictional facts, the plaintiff has a right to amend before the trial court dismisses the cause.[28] Dismissing a cause of action for lack of subject matter jurisdiction is proper only when it is impossible for the plaintiff's petition to confer jurisdiction on the trial court.[29]

BISD and the Board assert that in addition to considering the allegations asserted in the pleadings, the trial court may also consider evidence of "jurisdictional facts" in determining a plea to the jurisdiction. Specifically, they argue that while the trial court must take as true any allegations related solely to the merits of the plaintiff's claim in the absence of fraud, the trial court may hear and consider evidence on the allegations directly related to establishing jurisdiction. In support of this proposition, BISD relies heavily on *F/R Cattle Co. v. State of Texas.*[30] We therefore consider *F/R Cattle Co.* at length.

In *F/R Cattle Co.*, the State of Texas, on behalf of the Texas Air Control Board, sought to enjoin F/R Cattle's operations under the Texas Clean Air Act.[31] The trial court set a hearing on the State's petition for temporary injunction; however, at the hearing, the trial court only considered F/R Cattle's plea to the jurisdiction.[32] F/R Cattle asserted the State did not have jurisdiction to sue under the clean air act because the odors complained of were produced by "natural processes" and the clean air act specifically exempts emissions produced by natural processes.[33] After a full evidentiary hearing, the trial court dismissed the State's suit on the ground that the State did not have jurisdiction under the clean air act because the F/R Cattle facility was producing natural odors.[34]

The State appealed the dismissal, asserting the trial court erred in dismissing its cause of action. The court of appeals held as a matter of law that the odors produced by F/R Cattle were not the product of natural processes because the confinement of such a large number of calves in such a small area was unnatural.[35] F/R Cattle appealed, complaining the court of appeals erred by substituting its view of the facts for that of the factfinder. The supreme court agreed with F/R Cattle and concluded that under the clean air act, an evaluation of whether emissions are produced by natural processes is an inquiry best left to the factfinder.[36] The supreme court remanded the cause to the court of appeals to consider the State's remaining factual sufficiency points.[37]

We find *F/R Cattle Co.* inapplicable to the present case. In *F/R Cattle Co.*, the parties

**23.** *See Cox v. Klug,* 855 S.W.2d 276, 279 (Tex. App.—Amarillo 1993, no writ).

**24.** *Texas Ass'n of Bus.,* 852 S.W.2d at 446.

**25.** *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998).

**26.** *See Firemen's Ins. Co. v. Board of Regents of Univ. of Tex. Sys.,* 909 S.W.2d 540, 541 (Tex. App.—Austin 1995, writ denied).

**27.** *See Huston v. Federal Deposit Ins. Corp.,* 663 S.W.2d 126, 130 (Tex.App.—Eastland 1983, writ ref. n.r.e.).

**28.** *See Tex. Ass'n of Bus.,* 852 S.W.2d at 446.

**29.** *Liberty Mut. Ins. Co. v. Sharp,* 874 S.W.2d 736, 739 (Tex.App.—Austin 1994, writ denied).

**30.** 866 S.W.2d 200 (Tex.1993).

**31.** *Id.* at 201.

**32.** *Id.*

**33.** *Id.*

**34.** *Id.* at 202.

**35.** *Id.* at 203.

**36.** *Id.* at 205.

**37.** *Id.*

did not challenge the trial court's action in hearing evidence on the plea to the jurisdiction; rather, the issue in the case was the statutory construction of the term "natural processes" as that term was used in the clean air act. Because procedural issues relating to the plea to the jurisdiction process were not raised, the supreme court addressed the appeal in the procedural posture in which it was presented. Accordingly, we decline to construe *F/R Cattle Co.* as authority for the proposition that the trial court may consider evidence of jurisdictional facts in deciding a plea to the jurisdiction.

■ We have found one circumstance in which Texas courts have specifically stated the trial court may consider evidence on a plea to the jurisdiction: if the party asserting the plea asserts the allegations in the petition are false and were made only to confer jurisdiction where it would not otherwise exist.[38] However, a contention the plaintiff has stated a nonexistent claim, without more, is a matter of defense on the merits.[39]

We acknowledge some of our sister courts of appeals have indicated, without specifically holding, that evidence may be considered when deciding a plea to the jurisdiction.[40] However, to the extent these cases stand for this proposition, we decline to follow them.

■ BISD and the Board did not contend the Blues asserted false allegations solely to confer jurisdiction on the trial court.[41] Accordingly, we conclude the trial court was limited to reviewing the Blues' petition to determine whether it had subject matter jurisdiction over the cause of action asserted. Likewise, on appeal, we must take allegations in the pleadings as true and construe them

liberally in favor of the pleader.[42] We must determine whether a party has met its burden of pleading facts showing the trial court has subject matter jurisdiction over the cause of action.[43] We now turn to BISD and the Board's points of error.

## DISCUSSION

### A. Justiciable Interest

In their second point of error, BISD and the Board contend the Blues have not demonstrated an interest or injury peculiar to them individually and not as members of the general public. Specifically, they contend that because the undisputed evidence before the trial court shows the payments under the lease-purchase agreement are not being made with local school district taxpayer funds, the Blues do not have standing to enjoin those payments. BISD and the Board rely on Johnson's testimony that State "tier II" funds were being used to pay Citicorp. We have already concluded that, absent a claim that allegations were fraudulently made, the trial court must look solely to the pleadings to determine whether it has subject matter jurisdiction over the cause of action.

■ As noted above, taxpayers have standing to bring a suit in equity to enjoin public officials from expending funds under a void, illegal, or unconstitutional contract.[44] While a taxpayer may not sue to recover public funds already illegally expended, a taxpayer may sue to enjoin the future expenditure of public funds under an illegal agree-

38. *See Delk v. City of Dallas*, 560 S.W.2d 519, 520 (Tex.Civ.App.—Texarkana 1977, no writ); *Corsicana Indep. Sch. Dist. v. Corsicana Venetian Blind Co.*, 270 S.W.2d 296, 297 (Tex.Civ.App.—Waco 1954, no writ).

39. *Bernard Hanyard Enters. v. McBeath*, 663 S.W.2d 639, 642 (Tex.App.—Austin 1983, writ ref'd n.r.e.).

40. *See Dolenz v. Texas State Bd. of Med. Exam'rs*, 899 S.W.2d 809, 811 n. 3 (Tex.App.—Austin 1995, no writ); *Rodriguez v. American Gen. Fire & Cas. Co.*, 788 S.W.2d 583, 585–86 (Tex.App.—El Paso 1990, writ denied); *Harkness v. Hark-*

ness, 709 S.W.2d 376, 378 (Tex.App.—Beaumont 1986, writ dism'd); *Laurito v. McVey*, 496 S.W.2d 656, 659 (Tex.Civ.App.—Austin 1973, no writ).

41. *See Delk*, 560 S.W.2d at 520.

42. *Texas Ass'n of Bus.*, 852 S.W.2d at 446.

43. *See Texas Parks & Wildlife Dep't v. Garrett Place, Inc.*, 972 S.W.2d 140, 142–43 (Tex.App.—Dallas 1998, no writ).

44. *See Zimmelman*, 819 S.W.2d at 182; *First Nat'l Bank*, 551 S.W.2d at 113.

ment.[45] To establish standing, the plaintiff must establish (1) he or she is a taxpayer, (2) there exists an agreement under which public funds are to be expended in the future, and (3) the agreement or contract violates the Constitution or is otherwise illegal.[46]

■ In their petition, the Blues asserted (1) they are taxpayers of BISD, (2) there exists a lease-purchase agreement between BISD and Citicorp providing for biannual payments from public taxpayer funds through the year 2011, and (3) the lease-purchase agreement is illegal because BISD did not comply with public notice requirements before entering into the lease-purchase agreement. As noted above, BISD and the Board do not allege the Blues falsely asserted that school tax monies were being used solely to obtain standing in the trial court. Thus, we take as true the facts as pleaded by the Blues. Taking the Blues' allegations as true, they are sufficient to show the Blues have standing to sue for an injunction.[47] Moreover, even if the Blues had not asserted sufficient facts to show they had standing, the trial court could not dismiss without giving the Blues a chance to amend their pleadings to correct any deficiencies.[48] Accordingly, we conclude the trial court did not err in denying BISD and the Board's plea to the jurisdiction. We overrule BISD and the Board's second point of error.

## B. Justiciable Controversy

■ In their first point of error, BISD and the Board assert the Blues do not have standing because no justiciable controversy exists between the parties. Specifically, BISD and the Board assert BISD has already purchased the property, paid the contractor, and opened the school for classes; therefore, the Blues do not have standing to recover money already expended.[49]

In support of their argument, BISD and the Board rely on *Hulett v. West Lamar Rural High School District*.[50] In *Hulett*, the plaintiffs sought to enjoin the school district from carrying out an allegedly illegal contract to build a school financed by taxpayer bonds.[51] On the day of oral argument in the Texas Supreme Court, the school district provided affidavits showing the building had been completed, the contractor had been paid in full, and the district had accepted the building.[52] Thus, the injunctive relief sought by the plaintiffs was no longer available.[53] However, contrary to BISD and the Board's contentions, *Hulett* does not support its position because the taxpayers in that case sought to enjoin further construction; the taxpayers did not seek to enjoin the bond payments.

Here, the Blues are not seeking to enjoin construction of the building or recover money already paid to the contractor or to Citicorp. Instead, they allege the ongoing lease-purchase agreement between BISD and Citicorp is an illegal contract and seek a permanent injunction only for public funds not yet expended. Tellingly, during oral argument, appellate counsel for BISD and the Board stated, in response to a direct question from the Court, that the current owner of the building was Citicorp. Accordingly, we conclude that the Blues have pleaded a justiciable controversy. The trial court did not err in denying BISD and the Board's plea to the jurisdiction. We overrule BISD and the Board's first point of error.

We affirm the trial court's order denying BISD and the Board's plea to the jurisdiction.

---

45. *See Kordus v. City of Garland*, 561 S.W.2d 260, 262 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.).

46. *See id.*

47. *See id.*

48. *See Texas Ass'n of Bus.*, 852 S.W.2d at 446 (litigant has right to amend to cure pleading defects if jurisdictional facts not alleged).

49. *See Kordus,* 561 S.W.2d at 262.

50. 149 Tex. 289, 232 S.W.2d 669, 670 (1950).

51. *Id.* at 669.

52. *Id.* at 670.

53. *Id.*