**TRST CORPUS, INC., Appellant,**

v.

**FINANCIAL CENTER, INC., Appellee.**

No. 14–98–00051–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 18, 1999.

---

Ann Hartley, Austin, for appellant.

William E. Ryan, Houston, for appellee.

Panel consists of Chief Justice MURPHY and Justices HUDSON, and DRAUGHN.*

## OPINION ON MOTION FOR REHEARING

JOE L. DRAUGHN, Justice (Assigned).

Financial Center, Inc. (FCI) filed a motion for rehearing in this case. *See* TEX. R.APP. P. 49.1. In its motion, FCI contends that because this Court conducted a factual sufficiency review of the evidence, we should have reversed and remanded this matter to the trial court rather than reversing and rendering a judgment. FCI also contends that we erred in finding that TRST Corpus, Inc. (TRST) is a governmental unit and that FCI's declaratory judgment action is barred by sovereign immunity. Concerning FCI's complaints regarding our disposition of this appeal, for clarification, we grant FCI's motion for rehearing. In all other respects, FCI's motion for rehearing is denied. We withdraw our published opinion filed on August 5, 1999, and substitute this opinion in its stead.

### INTRODUCTION

In this interlocutory appeal, TRST Corpus, Inc. (TRST) appeals from the trial court's order denying its amended plea to the jurisdiction. TRST contends in a single issue that the trial court erred because the lawsuit by Financial Center, Inc. (FCI) against TRST is barred by sovereign immunity. We reverse and remand with instructions.

* Senior Justice Joe L. Draughn sitting by as-

### BACKGROUND

The Teacher Retirement System of Texas (TRS), a state agency, was established in accordance with Article 16, Section 67 of the Texas Constitution. The purpose of the TRS is to administer and invest its funds for the exclusive benefit of its participants and beneficiaries. According to its bylaws, the TRS possesses authority to make real estate mortgage commitments, real estate mortgage loan restructures, and to form title-holding subsidiaries of property or other interests in its real estate portfolio.

In 1985, the TRS loaned $24 million to a partnership, Tower II, Ltd., ("Tower" or "partnership") as financing for an addition to an existing office tower complex in Corpus Christi. Beginning in the early 1990s, the partnership was experiencing difficulty making its loan payments to the TRS. This was primarily due to Exxon, a major tenant, canceling its lease. Exxon paid a substantial cancellation fee, which the partnership paid to the TRS to service its loan. The TRS then restructured the partnership's loan. In 1996, still experiencing financial reverses, the partnership suggested that the TRS take title to the property by deed rather than instituting foreclosure proceedings. The TRS agreed and formed TRST Corpus, Inc. (TRST), a title-holding subsidiary corporation, and, in April 1997, assigned the partnership note and deed of trust to TRST. In May 1997, Tower conveyed the property to TRST by deed in lieu of foreclosure.

FCI is the management company that manages the office tower complex. Its management agreement with the partnership that owned the officer tower began in 1981 and is scheduled to expire in 2053. FCI received no management fees from the partnership after late 1992. FCI filed suit against the TRS, TRST and others, alleging various causes of action, including tort claims, breach of contract claims, and an unconstitutional "taking" claim, all per-

signment.

taining to the loan restructure and the transfer of title from the partnership to TRST. FCI alleged that pursuant to its management agreement, it is entitled to specific monetary damages, exemplary damages and a percentage of the substantial lease cancellation fee paid by Exxon. FCI also seeks a declaratory judgment relating to its rights under its management agreement. Upon its plea to the jurisdiction, the trial court dismissed the TRS from FCI's suit on the basis of sovereign immunity. However, the trial court denied TRST's plea to the jurisdiction.

## STANDARD OF REVIEW

■ A plea to the jurisdiction is the vehicle by which a party contests the trial court's authority to determine the subject matter of the cause of action. *Bland Independent School Dist. v. Blue*, 989 S.W.2d 441, 445 (Tex.App.-Dallas 1999, no pet.). It is a dilatory plea whose purpose is to defeat the cause of action without defeating the merits of the case. *Id.* at 445–46. The plaintiff bears the burden of alleging facts that affirmatively show the trial court has subject matter jurisdiction. *Id.* at 446. Because the question of subject matter jurisdiction is a legal question, we review the trial court's ruling on a plea to the jurisdiction under a *de novo* standard of review.

■ When deciding a plea to the jurisdiction, the general rule is the trial court must look to the allegations in the petition and must accept those allegations as true. *Id.* The trial court does not look at the merits of the case. *Id.* If the petition fails to allege jurisdictional facts, the plaintiff has a right to amend before the trial court dismisses the cause. *Bland Independent School Dist.*, 989 S.W.2d at 446. Dismissing a cause of action for lack of subject matter jurisdiction is proper only when it is impossible for the plaintiff's petition to confer jurisdiction on the trial court. *Id.*

## DISCUSSION

■ In its sole point of error, TRST contends that the trial court erred in denying its plea to the jurisdiction because it shares the same sovereign immunity as the TRS possesses. FCI responds by arguing that TRST is not a governmental unit and is therefore (1) not permitted to bring this interlocutory appeal, and (2) not entitled to assert sovereign immunity to bar FCI's lawsuit.

### A. Governmental Unit

For purposes of governmental liability, section 101.001 of the Civil Practice and Remedies Code defines "Governmental unit" as follows:

(A) this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;

(B) a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority;

(C) a volunteer fire department; and

(D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(2) (Vernon 1997).

There is no dispute that the TRS is a state agency and, hence, a governmental

unit. *See id.* The TRS derives it authority to administer the TRS system and to invest its funds from Article 16, Section 67 of the Texas Constitution. *See* TEX. CONST. art. XVI, § 67. The bylaws adopted by the TRS Board of Trustees provide the TRS with authority to, *inter alia*, make mortgage loan commitments, restructure mortgage loans, and maintain title-holding subsidiaries of property or other interests in its real estate investment portfolio.

Concerning the character of TRST, the record shows that in 1996, the TRS formed TRST as a title-holding subsidiary corporation. The TRS is the sole shareholder of all TRST stock. According to its articles of incorporation, TRST is organized

> [f]or the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to its shareholder, an organization which itself is exempt under Section 501 of the Internal Revenue Code of 1986, as amended (or the corresponding provisions of any subsequent federal tax laws).[1]

We hold that TRST is entitled to assert sovereign immunity. Its articles of incorporation show that TRST is owned and entirely controlled by the TRS. TRST's sole purpose is to hold title to a multi-million-dollar asset for the benefit of the TRS members. *See* TEX. CONST. art. 16, § 67(a). Under these circumstances, a lawsuit that may implicate TRST's assets necessarily implicates the TRS's assets. Consequently, a lawsuit against TRST is also a lawsuit against the TRS, a state agency. To the extent that the TRS may assert sovereign immunity against FCI's lawsuit, TRST may likewise assert sovereign immunity. *See K.D.F. v. Rex*, 878 S.W.2d 589, 596–97 (Tex.1994) (where a Kansas general partnership operated solely upon the discretion of a Kansas state agency, the two entities were not distinguishable, and a lawsuit against the partnership was a lawsuit against the state).

Consequently, contrary to FCI's contention, TRST, as a title-holding entity wholly owned by the TRS, a governmental unit, is entitled to bring this interlocutory appeal from the trial court's order denying its plea to the jurisdiction. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.1999).

## B. Sovereign Immunity

In its lawsuit, FCI seeks actual and exemplary damages from TRST, and other named defendants, for tortious interference, fraudulent transfer, conversion, breach of fiduciary duty, civil conspiracy, accounting, judicial foreclosure, constructive trust, breach of contract, unconstitutional taking, and a declaratory judgment.

Generally, sovereign immunity, unless waived, protects the State of Texas, its agencies and its officials from lawsuits for damages, absent legislative consent to sue the State. *Federal Sign v. Texas Southern Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). Sovereign immunity embraces two principles: (1) immunity from suit, and (2) immunity from liability. *Id.* First, the State retains immunity from suit, without legislative consent, even if the State's liability is not disputed. *Id.* Second, the State retains immunity from liability though the Legislature has granted consent to the suit. *Id.*

Immunity from suit bars a suit against the State unless the State expressly gives its consent to the suit. *Id.; see also* TEX. CIV. PRAC. & REM.CODE § 101.025 (Vernon 1997); TEX. CIV. PRAC. & REM.CODE §§ 107.001–.005 (Vernon 1997). In other words, although the claim asserted may be one on which the State acknowledges liability, this rule precludes a remedy until

---

1. As authority for the TRS to organize such an entity, we note that section 825.304 of the Government Code provides that the "assets of the retirement system may be held in the name of agents, nominees, depository trust companies, or other entities designated by the board of trustees." TEX. GOV'T CODE ANN. § 825.304 (Vernon 1997).

the Legislature consents to the suit. *Federal Sign*, 951 S.W.2d at 405. The State may consent to the suit by statute[2] or by legislative resolution. *Id.* Legislative consent for suit or any other sovereign immunity waiver must be "by clear and unambiguous language." Without the requisite consent to sue given by the State, the trial court lacks subject matter jurisdiction unless the suit comes under specific statutory waiver laws.

 Immunity from liability protects the State from judgments even if the Legislature has expressly given consent to the suit. *Id.* In other words, even if the Legislature authorizes suit against the State, the question remains whether the claim is one for which the State acknowledges liability. *Id.* The State neither creates nor admits liability by granting permission to be sued. *Id.; see also* TEX. CIV. PRAC. & REM.CODE § 107.002 (Vernon 1997) ("A resolution granting permission to sue does not waive to any extent immunity from liability.").

### 1. Tort Actions

 In its Sixth Amended Original Petition, FCI alleges several tort claims against TRST and other defendants.

 In Texas, a governmental unit is immune from tort liability unless the Legislature has waived immunity. *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998); *Texas A & M Univ. v. Bishop*, 996 S.W.2d 209 (Tex.App.-Houston [14th Dist.] 1999, no pet. h.). The Texas Tort Claims Act provides for a limited waiver of governmental immunity under specified circumstances. *Id.; Texas A & M Univ.*, at 213–14; *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997). Under the act, a governmental unit may be held liable

for property damage, personal injury and death under certain enumerated circumstances. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997). None of FCI's respective tort causes of action pled in its petition fall within the limited waiver of sovereign immunity identified in the Texas Tort Claims Act. Consequently, those causes of action are barred by TRST's sovereign immunity.

### 2. Contract Actions

 FCI also alleges a breach of contract claim against TRST and other defendants, and that such breach by TRST resulted in an unconstitutional taking of FCI's property.[3] The contract at issue is the management fee contract between FCI and Tower, to which neither the TRS not TRST is a party. FCI also seeks a declaratory judgment concerning its rights under the alleged contract.

 In *Federal Sign*, the Texas Supreme Court unequivocally held that "a private citizen must have legislative consent to sue the State on a breach of contract claim." 951 S.W.2d at 408. The court stated that while a State waives *immunity from liability* by entering into a contract with a private citizen, the act of contracting does not waive the State's *immunity from suit. Id.* (emphasis in original). The court expressly overruled any cases that hold to the contrary. *Id.* Lawsuits, such as the one at bar, that seek monetary damages from the State on a breach of contract, third-party beneficiary claim, require legislative consent to maintain. *See id.* at 405, 408. There being no evidence in the record showing that FCI received legislative permission to sue TRST for breach of contract, waiver by TRST of its immunity from suit has not been shown. *See id.* at 408. Accordingly,

**2.** *See, e.g.,* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021, *et seq.* (Vernon 1997) (Texas Tort Claim Act).

**3.** We observe that FCI's allegation that TRST's alleged breach of contract resulted in a "taking" of its property contradicts FCI's

contention that TRST is not a state agency. Generally, only the state can be liable for "taking" property without just compensation. *See* TEX. CONST. art I, § 17; *Imperial Irr. Co. v. Jayne*, 104 Tex. 395, 138 S.W. 575 (1911).

FCI may not maintain an action against TRST for breach of contract in the absence of such permission to sue.

 Further, in the absence of an allegation that the State intentionally performed acts which resulted in a "taking" of property for public use, in the context of a breach of contract action, sovereign immunity lies to bar a suit brought against the State for alleged unconstitutional takings.[4] See Green Int'l, Inc. v. State of Texas, 877 S.W.2d 428, 434–36 (Tex.App.-Austin 1994, writ dism'd by agr.); see also Texas Parks & Wildlife Dep't v. Callaway, 971 S.W.2d 145, 150 (Tex.App.-Austin 1998, no pet.). As the plaintiff failed to do in Green Int'l, Inc., FCI failed to allege in its Sixth Amended Original Petition that the state acted with the specific intent to take its property for public use. See id. at 434–35. Under these circumstances, sovereign immunity bars FCI's "taking" cause of action against TRST. See id. at 436.

 FCI also seeks a declaratory judgment against TRST and other defendants, concerning its rights under the alleged contract. As authority for its declaratory judgment action against TRST, it relies upon Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, 714–15 (1945). In Cobb, the complainants brought suit to obtain a judgment declaring that they were not "motor carriers" as defined by the tax statute and that state officials, endeavoring to compel respondents to pay the tax, were acting wrongfully and without legal authority. The court held that this was not a

suit against the state and thus was not barred by sovereign immunity. Id. The court emphasized that the complainants were not seeking to impose liability on the state or to compel performance of a contract. Id. In the present case, however, FCI's primary complaint is that the TRST has taken its property without just compensation. Because FCI primarily seeks money damages in a contractual context, its request for declaratory judgment does not fit under the exception to sovereign immunity established in Cobb. See Federal Sign, 951 S.W.2d at 404–05 (claims for state law violations did not dispense with need to secure legislative consent to sue state agency for damages); Callaway, 971 S.W.2d at 151–52. FCI seeks a declaration of its rights under the alleged contract, money damages, and an order enforcing its rights, if any, by injunction, judicial foreclosure, and/or constructive trust. As such, FCI's lawsuit is a suit against the State that cannot be maintained without legislative permission. See Callaway, 971 S.W.2d at 152; see also Herring v. Houston Nat'l Exch. Bank, 113 Tex. 264, 253 S.W. 813, 814 (1923) (suit against the state officers to require them to perform contract by state or to establish validity of contract by state is suit against state itself). We sustain TRST's point of error.

As noted above, dismissing an action for lack of subject matter jurisdiction is proper only when it is impossible for a plaintiff's petition to confer jurisdiction upon the trial court. See Bland Independent

---

4. A party must allege and prove more than negligence to establish a "taking" claim. Green Int'l, Inc., 877 S.W.2d at 434. The party must show intent to take, or at least the intent to do the act that caused the harm. Id. The rationale for this scienter requirement is the idea that negligence by government agents confers no benefit on the public. Id. Federal authority also supports an interpretation of the federal takings clause to include an element of governmental intent. Id. In contractual situations, when the government acts within the procedures outlined in the contract for the withholding of materials and equipment, the government has shown no intent to

take under eminent domain. Id. In addition, whenever the government acts within a color of right to take or withhold property in a contractual situation, the government cannot be said to have effected a taking because there was no intent to take, only an intent to act within the scope of the contract. Green Int'l, Inc., 877 S.W.2d at 434. Even if the government were to withhold property or payment it believed to be due the other party, the government would still be acting within the color of right to the extent it had a good faith belief that its actions were justified due to disagreements over payment due or performance under the contract. Id.

*School Dist.*, 989 S.W.2d at 446. We conclude that because of TRST's status as a governmental unit, it is not possible for FCI's petition to be amended to confer jurisdiction upon the trial court. *See id.; see also Lamar University v. Doe*, 971 S.W.2d 191, 197 (Tex.App.-Beaumont 1998, no pet.). Absent consent to sue by the State or specific statutory waiver, subject matter jurisdiction is lacking.

Accordingly, we reverse the trial court's order denying TRST's plea to the jurisdiction, and we remand this matter to the trial court with instructions to enter an order dismissing FCI's claims against TRST for lack of jurisdiction.