**Opinion issued July 7, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00767-CV

———————————

**SHIRLEY LENOIR, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF SHANA LENOIR AND CHRISTOPHER MCKNIGHT, INDIVIDUALLY AND AS NEXT FRIEND OF NAYLA MCKNIGHT, Appellants**

**V.**

**U.T. PHYSICIANS, Appellee**

---

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-35806**

---

## O P I N I O N

This is a health care liability case arising from the death of Shana Lenoir hours after receiving prenatal care at U.T. Physicians clinic (UTP). UTP obtained dismissal from the suit when the trial court granted its plea to the jurisdiction based

on an assertion of governmental immunity. The appellants (referred to collectively as "the Lenoirs") brought this interlocutory appeal challenging the dismissal.

The Lenoirs contend that the trial court erred by granting UTP's plea to the jurisdiction because (1) UTP failed to prove that it is a governmental unit as defined by the Tort Claims Act (TCA) and (2) to the extent the TCA does apply, the Lenoirs adequately alleged that Shana's death was proximately caused by an employee's use of tangible physical property.

Because we agree that UTP did not meet its burden to establish that it is a governmental unit, we reverse the trial court's order granting UTP's plea to the jurisdiction and remand for further proceedings.

**Background**

Shana Lenoir received prenatal care at UTP clinic. She was seen by Dr. Gonski—a second-year medical resident. Shana discussed with Dr. Gonski complications she had with an earlier twin pregnancy. The twins were born preterm. One died; the other required extensive medical care and was in the neonatal intensive care unit for several months. On this visit, Shana was between 32 and 35 weeks pregnant with twins. Dr. Gonski prescribed weekly injections of progesterone. A nurse employed by UTP clinic, Angela Matthews, gave Shana her initial progesterone injection during the office visit.

While at home several hours later, Shana began having difficulty breathing. She was taken by EMS to Memorial Hermann Hospital; however, she and both of her unborn children died before they arrived.

The Lenoirs sued the treating physician (Dr. Gonski), the attending physician overseeing Dr. Gonski (Dr. Huang), the nurse who injected the progesterone medication (Matthews), and UTP clinic.[1] In related appeals, we have rendered judgment for Matthews, affirmed the dismissal of Dr. Huang, and reversed the dismissal of Dr. Gonski.[2] We now consider whether the trial court erred by dismissing UTP based on governmental immunity.

## The Lenoirs are not Barred by Judicial Admission

As an initial matter, UTP argues that the Lenoirs are prohibited from contesting its status as a governmental unit because they made judicial admissions when contesting the dismissal of UTP's nurse employee, Matthews.

### A. A Judicial admission is an unequivocal assertion of fact

A judicial admission is an unequivocal assertion of fact that, once made, relieves the opposing party of its burden of proving the admitted fact and bars the admitting party from disputing that fact. *See Holy Cross Church of God in Christ*

---

[1] Dr. Gonski contended that she worked for the UT Medical Foundation, and Dr. Huang contended that he worked for the UT Health Science Center at Houston (UTHSC-H). The Lenoirs did not sue either of those entities.

[2] *Matthews v. Lenoir*, 439 S.W.3d 489 (Tex. App.—Houston [1st Dist.] 2014, pet. filed Oct. 6, 2014); *Lenoir v. Marino*, No. 01-13-01034-CV, 2015 WL ____ (Tex. App.—Houston [1st Dist.] July 2, 2015, no pet. h.) (op. on reh'g).

3

*v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001); *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983); *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980). A judicial admission must be "clear, deliberate, and unequivocal." *Regency Advantage Ltd. P'ship v. Bingo Idea–Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex. 1996).

> The elements for establishing that a statement is a judicial admission are
>
> (1) the statement must be made in the course of a judicial proceeding;
>
> (2) it must be contrary to an essential fact or defense asserted by the party;
>
> (3) it must be deliberate, clear, and unequivocal;
>
> (4) it cannot be destructive of the opposing party's theory of recovery or defense; and
>
> (5) enforcing the statement as a judicial admission would be consistent with public policy.

*H2O Solutions, Ltd. v. PM Realty Grp., LP*, 438 S.W.3d 606, 617 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 357 (Tex. App.—Houston [1st Dist.] 2012, no pet.). "An assertion of fact pleaded in the alternative is not a judicial admission." *H2O Solutions*, 438 S.W.3d at 617; *accord Wolf*, 44 S.W.3d at 568.

**B.      The Lenoirs did not judicially admit that UTP is a governmental unit**

UTP's original answer contained an assertion of governmental immunity. Consistent with that assertion, the Attorney General's Office began representing UTP. Subsequently, Matthews moved for dismissal, asserting that she had not been

timely served with an expert report. In response, the Lenoirs argued that the AG's actual representation of the employer (UTP) alleged to be vicariously liable for the negligent acts of its employee (Matthews) mandated that the AG also represent the employee. Thus, the Lenoirs argued, timely service of the expert report on the AG's office counted as timely service on Matthews.

Nowhere in that argument is there a "deliberate, clear, and unequivocal" assertion of fact that UTP is a governmental unit. *See Regency Advantage Ltd. P'ship*, 936 S.W.2d at 278. Instead, the Lenoirs were arguing that, if the defendants were going to "allege" that they had governmental immunity, then they were going to be bound by the laws and rules that accompany that assertion, including that the AG's representation of the employer mandates that the AG also represents the employee. In other words, the defendants (including UTP and Matthews) could not purport to rely on governmental immunity to defeat the Lenoirs' claims while avoiding the effects of that assertion (AG representation and adequate service).

The Lenoirs took a consistent position in the *Matthews* appeal, arguing in their brief:

> U.T. Physicians was represented by the Office of the Attorney General (OAG) because it alleged that it is a governmental unit in its answer. As such, the OAG is also the attorney for U.T. Physicians' former co-employee, Nurse Matthews. . . . Since U.T. Physicians alleges that it is a governmental unit of the State of Texas and Nurse Matthews was its former employee, the attorney general is her attorney in negligence actions arising from conduct in the course and scope of her employment or contractual performance.

5

. . . .

> The Lenoirs have never argued that the OAG "automatically became Nurse Matthews' attorney simply upon filing of the lawsuit. Instead, the Lenoirs asserted that the OAG was already participating in the lawsuit as the attorneys of record for Nurse Matthews' vicariously liable co-employer, U.T. Physicians, an alleged governmental unit. Therefore, U.T. Physicians must have requested legal representation from the OAG because the OAG filed an answer on behalf of U.T. Physicians, on July 20, 2012. Since the OAG was already representing U.T. Physicians based on the conduct of its co-employee, Nurse Matthews, the OAG was also responsible for providing legal representation to Nurse Matthews, even though she had not yet been served with process.

To the extent there is an "assertion of fact" in this argument, it concerns who was representing Matthews, not whether UTP is a governmental unit.

Likewise, the Lenoirs never admitted that UTP was a governmental unit in the pleadings underlying this appeal. The Lenoirs have consistently maintained that "UT Physicians is an independent contractor to UTHSCH and is not entitled to governmental immunity. Further, Defendant Angela Matthews is an employee of an independent contractor and her employer is not entitled to assert governmental immunity under the plain language of the statute."

Furthermore, AG representation was not the Lenoirs' only argument against dismissal of Matthews. They made two additional, *alternative* arguments: (1) Matthews failed to timely object to the Lenoirs' report and, therefore, waived all other challenges to the report and (2) the Lenoirs' diligence in attempting service on Matthews prevented dismissal on constitutional grounds.

6

In conclusion, the Lenoirs made alternative arguments why Matthews should not be dismissed from the suit. None of the three arguments were based on an unequivocal assertion that UTP qualifies as a governmental unit. We, therefore, conclude that no judicial admission was made. Accordingly, we reject UTP's argument that the Lenoirs are barred from challenging the grant of UTP's plea to the jurisdiction.

**Plea to the Jurisdiction Standard of Review**

A trial court must have subject-matter jurisdiction to decide a case. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). A plaintiff bears the initial burden of alleging facts that affirmatively demonstrate the trial court's subject-matter jurisdiction over the suit. *Id.* at 446. A defendant may challenge the trial court's subject-matter jurisdiction through a plea to the jurisdiction. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

The purpose of a plea to the jurisdiction is to "defeat a cause of action without regard to whether the claims asserted have merit." *Id.* It does not authorize delving into the merits of the plaintiff's claims, but rather, examining the preliminary issue of whether the merits of those claims should be reached. *Id.* Accordingly, in reviewing the trial court's ruling on a plea to the jurisdiction, we construe the pleadings liberally in favor of the plaintiff and determine if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to

hear the cause. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Villarreal v. Harris Cnty.*, 226 S.W.3d 537, 541 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

If the pleadings lack sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not reveal incurable jurisdictional defects, the issue is one of pleading sufficiency, and the trial court may either afford the plaintiff an opportunity to amend or await further development of the case's merits. *Miranda*, 133 S.W.3d at 226–27; *Villarreal*, 226 S.W.3d at 541. Conversely, if the pleadings affirmatively negate the existence of jurisdiction, the trial court may grant the plea to the jurisdiction without providing the plaintiff an opportunity to amend. *Miranda*, 133 S.W.3d at 227; *Villarreal*, 226 S.W.3d at 541.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Miranda*, 133 S.W.3d at 227; *Bland*, 34 S.W.3d at 555 (confining evidentiary review to evidence relevant to jurisdictional issue). If the evidence creates a fact question regarding the jurisdictional issue, then the movant has failed to establish its right to dismissal. *See Miranda*, 133 S.W.3d at 227–28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the plea to the jurisdiction may be ruled on as a matter of law. *Id.* at 228.

## Governmental Immunity and
## Waiver through the Tort Claims Act

The doctrine of governmental immunity bars suits against the state and its governmental units unless the state consents by waiving immunity. *Tex. Adjutant General's Office v. Ngakoue*, 408 S.W.3d 350, 353 (Tex. 2013). Governmental immunity protects subdivisions of the State from lawsuits and liability, which would otherwise "hamper governmental functions by requiring tax resources to be used for defending lawsuits and paying judgments rather than using those resources for their intended purposes." *Id.* (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655–56 (Tex. 2008)). Only the Legislature may waive immunity. *Id.*; *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Statutory waivers of immunity are construed narrowly. *Garcia*, 253 S.W.3d at 655; *see* TEX. GOV'T CODE ANN. § 311.034 (West 2013) (statutes are construed to waive sovereign immunity only if "by clear and unambiguous language").

The TCA provides a limited waiver for certain tort claims against the government. TEX. CIV. PRAC. & REM. CODE ANN. § 101.001–.109 (West 2014). The TCA permits a determination of liability on a governmental unit for a death caused by use of tangible personal property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law. *Id.* § 101.021(2).

9

**UTP Has Not Established that it is a Governmental Unit**

An entity meets the statutory definition of a governmental unit if its "status and authority . . . are derived from the Constitution of Texas or from laws passed by the legislature under the constitution." TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(D) (defining governmental unit). The "dispositive issue" is less who creates the entity than who gives "meaning" to its existence; in other words, "[w]ho bestows the status and authority" to the entity and specifies its "powers," "authority," and "status." *LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 81 (Tex. 2011).

There is no dispute that the University of Texas System and the University of Texas Health Science Center at Houston (UTHSC-H) are governmental units under the TCA and are entitled to governmental immunity. But that does not answer the question whether UTP's status and authority are derived from the state constitution or laws of the Legislature.

UTP argues that its status and authority are derived from laws passed by the Legislature, relying on various Education Code provisions and the minutes from a meeting of the Board of Regents of the University of Texas System. UTP points to Education Code Section 65.31(a), providing that the UT Board of Regents "is authorized and directed to govern, operate, support, and maintain each of the component institutions that are now or may hereafter be included in a part of The

University of Texas System." TEX. EDUC. CODE ANN. § 65.31(a) (West 2002) Section 65.11 charges the UT Board with the "administration" and "organization" of the UT System institutions and entities to "achieve the maximum operating efficiency of such institutions and entities." *Id.* § 65.11 (West 2002). Further, Section 65.31(g) allows the UT Board "by rule [to] delegate a power or duty of the board to a committee, officer, employee, or other agent of the board." *Id.* § 65.31(g).

UTP also points to the minutes of a UT Board of Regents meeting memorializing the Board's decision to permit UTHSC-H and other health science centers to create certified nonprofit health corporations, like UTP. Based on these provisions and evidence, UTP claims that it is a governmental unit derived from the laws of the Legislature.

But the Legislature has never granted UTP power, authority, or status. Section 65.02 specifically lists 12 entities that comprise the UT System. *Id.* § 65.02. It further lists 29 subordinate entities that are included within the 12 main entities. *Id.* The statute identifies UTHSC-H and lists within it the UT Houston Medical School, Dental Branch, Graduate School of Biomedical Sciences, School of Health Information Sciences, School of Public Health, Speech and Hearing Institute, and School of Nursing. *Id.* The list does not include UTP. *See id.*

11

Subsection (b) then states, "The University of Texas System shall also be composed of such other institutions and entities as from time to time may be *assigned by specific legislative act* to the governance, control, jurisdiction, or management of The University of Texas System." *Id.* § 65.02(b) (emphasis added). Section 73.001(7) states that the University of Texas Houston is composed of six component institutions (none of which are UTP) and "other institutions and activities assigned to it from time to time." *Id.* § 73.001. Thus, the Legislature reserved to itself authority to add entities to the UT System, and it has not added UTP.

An entity cannot incorporate itself into the UT System "by custom and usage or at the behest of a single university officer." *Univ. Interscholastic League v. Payne*, 635 S.W.2d 754, 757 (Tex. App.—Amarillo 1982, writ dism'd) (holding that UIL failed to establish that it qualified as governmental entity in its own right or as part of UT–Austin, even though UIL was created at urging of UT–Austin president). Only if the Legislature specifically addresses the existence and status of an entity will the requirements for classification as a governmental unit be met. *See Univ. Interscholastic League v. Sw. Officials Ass'n, Inc.*, 319 S.W.3d 952, 958 (Tex. App.—Austin 2010, no pet.) (noting post-*Payne* amendment to Education Code declaring that UIL is part of UT–Austin and holding that statutory reference

met requirement for UIL to be considered governmental unit for governmental immunity purposes).

Adhering to the rule that the source of status and authority is the dispositive issue, the Texas Supreme Court recently held that open-enrollment charter schools qualify as governmental units because multiple Education Code provisions detail open-enrollment charter schools' powers, authority to operate, and status, even though each such entity is chartered by the State Board of Education instead of the Legislature. *See LTTS Charter Sch.*, 342 S.W.3d at 80–82. As the Court explained,

> The Legislature's own pronouncements declare the status and authority of open-enrollment charter schools. Other state entities and officials may exercise a measure of oversight pursuant to those statutory commands, but the commands themselves, and that they are legislative, are what matter most.

*Id.* at 82.

We also find instructive an appellate opinion in which the court held that a water system created by the City of San Antonio did not independently meet the statutory definition of a governmental unit. *See San Antonio Water Sys. v. Smith*, 451 S.W.3d 442, 450–51 (Tex. App.—San Antonio 2014, pet. withdrawn). In *Smith*, the San Antonio Water System claimed that it was a governmental unit independent of the city. *Id.* at 445–46. The appellate court noted that the Legislature had authorized municipalities to create water system. And the City of San Antonio, by a city ordinance, had done so. However, no statute conferred

13

status or authority to the water systems. *Id.* at 450. Because the actual status and authority of the water system derived from a city ordinance, instead of a statute, the appellate court held that the water system was not a governmental unit independent of the city. *Id.* at 450–51. It was, instead, an agent of the governmental unit that created it—the City of San Antonio. *Id.*

Here, UTP points to no statutory provision that discusses the status or authority of non-profit healthcare corporations like UTP. The evidence establishes that UTP's status and authority are derived from actions by the UT System Board, not the Legislature. *Cf. LTTS Charter Sch.*, 342 S.W.3d at 80 (noting multiple Education Code provisions establishing powers and authority of charter schools) *and Arbor E&T, LLC v. Lower Rio Grande Valley Workforce Dev. Bd., Inc.*, No. 13-13-00139-CV, 2013 WL 8107122, at *4 (Tex. App.—Corpus Christi Dec. 5, 2013, no pet. h.) (considering multiple statutory provisions discussing "status" and "authority" of local workforce development boards to hold that local workforce development board met statutory definition of governmental unit). We therefore conclude that UTP does not qualify as a governmental unit independent of UTHSC-H.

**UTP may not rely on UTHSC-H's Immunity**

UTP next argues that, even if it does not qualify as a governmental unit in its own right, it may share in UTHSC-H's immunity because it is a wholly-owned

14

subsidiary of UTHSC-H.  UTP finds support for its argument in *TRST Corpus, Inc. v. Fin. Ctr., Inc.*, 9 S.W.3d 316, 321 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).

In *TRST*, the Teacher Retirement System of Texas (TRS), a state agency, formed a title-holding subsidiary corporation (TRST) to hold its assets. *Id.* at 321. TRS was the sole shareholder of all of TRST's stock. The creation of the wholly-owned subsidiary was under the authority provided by Government Code section 825.304, which states that the "assets of the retirement system may be held in the name of agents . . . or other entities designated by the board of trustees." *Id.* at 321 & n.1 (citing TEX. GOV'T CODE ANN. § 825.304 (West 2012)).  The appellate court held that TRS's agent could benefit from its immunity. *Id.*; *see also K.D.F. v. Rex*, 878 S.W.2d 589, 597 (Tex. 1994) (holding that entity created by Kansas governmental unit that operates solely under direction of governmental unit without exercising any discretion of its own may benefit from governmental unit's immunity); *cf. Brown & Gay Eng'g, Inc. v. Olivares*, No. 13-0605, 2015 WL 1897646, at *5 (Tex. Apr. 24, 2015) (discussing *K.D.F.* case and holding that "no control" by principal over private party is "determinative" of issue and principal's immunity will not be extended to private party).

Unlike a holding company, we are concerned here with a functioning medical clinic where physicians (employed by UTHSC-H) come together with

15

nurses, clinical personnel and others (employed by UTP, third-party staffing companies, or jointly between them) to provide medical care to the public. In a clinical setting, all involved make decisions, interact with patients, and are engaged in various and sometimes distinct aspects of the patients' care. We do not view the activities in such a dynamic environment to be equivalent to the concept of a holding company that has no independent discretion: the two are not analogous.

Further, by statute, a governmental unit does not waive liability for the negligence of all varieties of agents, only for its employees acting with the scope of their employment with the governmental entity. *Dumas v. Muenster Hosp. Dist.*, 859 S.W.2d 648, 650 (Tex. App.—Fort Worth 1993, no writ); *Harris v. Galveston Cnty.*, 799 S.W.2d 766, 768 (Tex. App.—Houston [14th Dist.] 1990, writ denied).

The Act defines "employee" as a person who is "in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control." TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(2); *Murk v. Scheele*, 120 S.W.3d 865, 866 (Tex. 2003). UTP has never argued that UTHSC-H had the right to control Matthews's work, such that UTHSC-H's immunity would apply to the nurse's work at the clinic.

16

Moreover, applying UTHSC-H's immunity to UTP would be contrary to the Legislature's directive that only it may add entities to the UT System and, by extension, to its immunity protections. *See* TEX. EDUC. CODE ANN. § 65.02(b) ("The University of Texas System shall also be composed of such other institutions and entities as from time to time may be *assigned by specific legislative act . . . .*" (emphasis added)); *id.* § 73.001(7) (stating that The University of Texas at Houston is composed of only six named component institutions, plus "other institutions and activities assigned to it from time to time.").

Because we have concluded that UTP has not met its burden to establish that it qualifies as a governmental unit or to otherwise assert a right to governmental immunity from its relationship with UTHSC-H, we conclude that the trial court erred in granting UTP's plea to the jurisdiction and sustain the Lenoirs' first issue. We therefore do not reach their second issue concerning whether the Lenoirs adequately pleaded use of personal property to fit within an area in which immunity has been waived.

**Conclusion**

The trial court's order granting UTP's plea to the jurisdiction and dismissing the Lenoirs' claims against UTP is reversed. The case is remanded for further proceedings.

17

                                    Harvey Brown
                                    Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.