# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00030-CV

**The University Interscholastic League, Appellant**

**v.**

**Southwest Officials Association, Inc., d/b/a Texas Association of Sports Officials, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
## NO. D-1-GN-09-004092, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## O P I N I O N

The University Interscholastic League ("the UIL") appeals from the trial court's order denying its plea to the jurisdiction in a suit brought by Texas Association of Sports Officials ("TASO"). In its suit for declaratory and injunctive relief, TASO seeks to prevent the UIL from implementing its plan to begin regulating the officiating of high school varsity sports in Texas. TASO also seeks damages based on a claim that the UIL has tortiously interfered with TASO's contractual relations with its members. Because we conclude that TASO's claims are barred by sovereign immunity, we reverse the order of the trial court and dismiss this suit for want of jurisdiction.

## BACKGROUND

The UIL is an organization governing extracurricular athletic and academic contests in all Texas public schools and certain private parochial schools. According to the education code,

the UIL "is a part of The University of Texas at Austin." Tex. Educ. Code Ann. § 33.083(b) (West 2006). In addition to administering extracurricular activities, the UIL is charged by statute with enforcing certain regulatory schemes, including the "No Pass No Play" policy applicable to student athletes and the prevention of illegal steroid use.[1] *See id.* §§ 33.081(c), .091 (West Supp. 2009).

TASO is a professional trade association made up of approximately 12,000 Texas sports officials, organized in 196 local chapters across the state. According to its pleadings, TASO registers sports officials, provides educational materials and training, promotes the professional interests of Texas sports officians, advocates on behalf of its members, and conducts formal disciplinary hearings and oversight of its members.

Until recently, section 1204 of the UIL rules ("Rule 1204") provided that member schools should use TASO-registered sports officials for UIL-sponsored sporting events. In November 2009, however, the UIL amended Rule 1204 to provide that only those sports officials who register and pay dues to the UIL may officiate UIL-sponsored varsity team-sport contests.[2] In response to the amendment to Rule 1204, TASO filed suit, arguing that the UIL was (1) attempting to exercise an unauthorized delegation of power, (2) improperly imposing an occupation tax, and

---

[1] The "No Pass No Play" policy dictates that a student receiving a grade lower than the equivalent of a 70 on a scale of 100 in any academic class shall be suspended from UIL-sponsored activities or otherwise sanctioned by the UIL or the student's school district. *See* Tex. Educ. Code Ann. § 33.081(c) (West Supp. 2009). Section 33.091 of the education code requires high school athletes to agree to submit to random testing for the presence of illegal steroids as a condition of participation in UIL-sponsored athletic contests. *See id.* § 33.091 (West Supp. 2009).

[2] The amended rule does not prohibit officials from registering with both TASO and the UIL. Officials who do not register with the UIL remain free to officiate non-varsity sporting events and individual-sport contests such as tennis, golf, swimming, and wrestling.

2

(3) tortiously interfering with the contractual relationships between TASO and its individual members.[3] TASO sought a temporary restraining order and injunctive relief to prevent the UIL from implementing the changes to Rule 1204, as well as a declaration that the UIL's actions were unauthorized, illegal, and void. TASO further sought actual and consequential damages resulting from its claim of tortious interference with contractual relationships.

After the trial court granted TASO's request for a temporary restraining order, the UIL filed a plea to the jurisdiction on the basis of sovereign immunity. The trial court denied the plea, and the UIL filed the present interlocutory appeal. TASO then filed a petition for writ of injunction in this Court, seeking to extend the terms of the temporary restraining order to cover the pendency of the interlocutory appeal.[4] This Court granted the petition and issued a writ of injunction, incorporating the terms of the temporary restraining order. *See In re Texas Ass'n of Sports Officials*, No. 03-10-00029-CV, 2010 Tex. App. LEXIS 856 (Tex. App.—Austin Feb. 5, 2010, orig. proceeding) (mem. op.).

## STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). In an appeal from a plea to the jurisdiction, we "review the face of appellants' pleadings to determine whether

---

[3] TASO's tortious-interference claim was based in part on an allegation that the UIL had persuaded certain local TASO chapters to turn over collected membership dues to the UIL.

[4] An interlocutory appeal from an order denying a plea to the jurisdiction "stays all other proceedings in the trial court pending resolution of the appeal." Tex. Civ. Prac. & Rem. Code Ann. § 51.014(b) (West 2008); *see also id.* § 51.014(a)(8). In the absence of a writ of injunction, the trial court's temporary restraining order would have expired while the interlocutory appeal was pending.

3

they show a lack of jurisdiction or whether the pleadings, if liberally construed, favor[] jurisdiction." *Atmos Energy Corp. v. Abbott*, 127 S.W.3d 852, 855 (Tex. App.—Austin 2004, no pet.). Whether a trial court has subject-matter jurisdiction is a question of law we review de novo. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). If the pleadings do not affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004). If the pleadings affirmatively negate jurisdiction, then a plea to the jurisdiction may be granted without allowing an opportunity to amend. *Id.* at 227. Unless a pleaded jurisdictional fact is challenged and conclusively negated, it must be taken as true for purposes of determining subject-matter jurisdiction. *City of Austin v. Leggett*, 257 S.W.3d 456, 462 (Tex. App.—Austin 2008, pet. denied). In reviewing a plea to the jurisdiction, we consider the pleadings and, when necessary to resolve the jurisdictional issues raised, relevant evidence submitted by the parties. *See Miranda*, 133 S.W.3d at 227.

## DISCUSSION

On appeal, the UIL argues that the trial court lacks jurisdiction over TASO's suit because the UIL is entitled to sovereign immunity and because sovereign immunity has not been waived with respect to TASO's claims. The UIL also argues that the trial court lacks jurisdiction because TASO does not have standing to assert its claims.

*Entitlement to Sovereign Immunity*

In its first issue on appeal, the UIL asserts that the trial court erred in denying its plea to the jurisdiction because the UIL is a governmental entity entitled to sovereign immunity. TASO,

4

on the other hand, argues that the UIL is a private, voluntary association and therefore is not protected by sovereign immunity. While other courts have addressed the UIL's legal status for purposes such as federal antitrust law, *see Saenz v. UIL*, 487 F.2d 1026, 1028 (5th Cir. 1973) (holding that UIL is governmental entity immune from antitrust liability), and the now defunct appeal-bond requirement, *see UIL v. Maroney*, 681 S.W.2d 285, 286 (Tex. App.—Austin 1984, writ ref'd) (holding that UIL is not governmental entity excused from appeal-bond requirement), the question of the UIL's legal status under the current statutory scheme for purposes of sovereign immunity appears to be an issue of first impression.

Sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits in which the State or certain governmental units have been sued unless the State consents to suit. *Miranda*, 133 S.W.3d at 224. The definition of "governmental unit" for purposes of sovereign immunity under the Texas Tort Claims Act, *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109 (West 2005 & Supp. 2009), includes, in relevant part:

> (A) this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;
>
> . . .
>
> (D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

*Id.* § 101.001(3).

In support of its position that the UIL is not protected by sovereign immunity, TASO argues that no statutory or constitutional provision specifically creates the UIL. While this is true, section 33.083 of the education code, entitled "Interscholastic Leagues," specifically addresses the existence and status of the UIL, stating:

> (b) The [UIL] *is a part of The University of Texas at Austin* and must submit its rules and procedures to the commissioner [of education] for approval or disapproval. The funds belonging to the [UIL] shall be deposited with The University of Texas at Austin for the benefit of the league and shall be subject to audits by The University of Texas at Austin, The University of Texas System, and the state auditor. Copies of annual audits shall be furnished, on request, to members of the legislature.

Tex. Educ. Code Ann. § 33.083(b) (emphasis added); *see also id.* § 5.001(3) (West Supp. 2009) (defining "Commissioner" as "the commissioner of education").

Based on the plain language of section 33.083, the UIL is a component part of The University of Texas at Austin ("UT-Austin"). *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) (holding that legislative intent should be discerned, when possible, from plain meaning of words chosen). The University of Texas was created by the Texas Constitution, *see* Tex. Const. art. VII, § 10, and it is well settled that state universities are governmental entities subject to sovereign immunity. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006) ("The State's sovereign immunity extends to various divisions of state government, including agencies, boards, hospitals, and *universities*.") (emphasis added); *see also Axtell v. University of Tex.*, 69 S.W.3d 261, 267 (Tex. App.—Austin 2002, no pet.) (affirming grant of UT-Austin's plea to jurisdiction based on sovereign immunity).

6

TASO contends, however, that section 33.083 is not dispositive as to the UIL's legal status, citing cases in which courts of appeals, including this Court, have held that the UIL is not a governmental entity for purposes of exemption from the now defunct appeal-bond requirement. *See Maroney*, 681 S.W.2d at 286; *UIL v. Payne*, 635 S.W.2d 754, 757 (Tex. App.—Amarillo 1982, no writ). At the outset, we note that neither *Maroney* nor *Payne* specifically addresses the issue of the UIL's entitlement to sovereign immunity. Further, the current version of education code section 33.083, which provides that the UIL "is a part" of UT-Austin, did not exist when *Maroney* and *Payne* were decided. In *Maroney*, this Court rejected the UIL's argument that it was a part of UT-Austin, noting that the relevant statutory provision at that time stated, "The [UIL], which is a part of [UT-Austin], must submit its rules and procedures to the State Board of Education for approval." 681 S.W.2d at 287; *see also* Act of June 30, 1984, 68th Leg., 2d C.S., ch. 28, art. IV, part F, § 2, 1984 Tex. Gen. Laws 117, 168. The Court held that this statutory language was not "conclusive recognition" of the UIL's status as a part of the university, but was "simply to identify or make certain the particular organization which had the duty to submit its rules and procedures to the State Board of Education for approval." *Maroney*, 681 S.W.2d at 287. After this Court's decision in Maroney, the education code was amended to its current version, which definitively states, "The [UIL] is a part of [UT-Austin]." Tex. Educ. Code Ann. § 33.083(b); *see also* Act of May 29, 1989, 71st Leg., R.S., ch. 813, § 5.01, 1989 Tex. Gen. Laws 3678, 3710, *recodified by* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, sec. 33.083, 1995 Tex. Gen. Laws 2207, 2348. As a result of this change, the relevant language of the statute can no longer be read as merely a means of identifying the UIL, as it is now a clear statement that the UIL is in fact "a part of" UT-Austin.

7

*See National Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000) ("We presume that the Legislature intended the plain meaning of its words."). Further, in amending the statute, the legislature not only stated that the UIL is a part of UT-Austin, but also added the requirements that the UIL deposit its funds with and be subject to audits by UT-Austin, further indicating the legislature's intent to classify the UIL as a part of UT-Austin. *Compare* Act of June 30, 1984, 68th Leg., 2d C.S., ch. 28, art. IV, part F, § 2, 1984 Tex. Gen. Laws 117, 168, *with* Act of May 29, 1989, 71st Leg., R.S., ch. 813, § 5.01, 1989 Tex. Gen. Laws 3678, 3710.

In *Payne*, the court held that the UIL was not exempt from the appeal bond requirement because it presented no authority to establish its public entity status, noting that the UIL's assertion that it was a part of UT-Austin appeared for the first time in a post-submission brief. 635 S.W.2d at 757. The court then went on to conclude that the UIL's status as a part of UT-Austin was not established on the record, stating, "[W]e do not believe that the [UIL] can incorporate itself into the University of Texas system by custom and usage or at the behest of a single university officer." *Id.*[5] In the present case, the UIL does not rely on custom or usage, but on section 33.083(b) of the education code, which formally classifies the UIL as a component part of UT-Austin. Given the manner in which *Maroney* and *Payne* can be distinguished from the present case, we do not consider them to be persuasive authority on the issue of whether the UIL is subject to sovereign immunity.

---

[5] Because the statutory provision described by this Court in *Maroney* was not enacted until 1984, it appears that the court in *Payne* did not have the benefit of any legislative pronouncement regarding the UIL's relationship to UT-Austin. *See* Act of June 30, 1984, 68th Leg., 2d C.S., ch. 28, art. IV, part F, § 2, 1984 Tex. Gen. Laws 117, 168.

8

In addition to its statutorily recognized status as a component part of UT-Austin, the UIL is also subject to legislative oversight in ways that are inconsistent with private entity status. Section 33.083 of the education code requires the UIL to submit its rules and procedures for approval by the commissioner of education, deposit its funds with UT-Austin, and submit to state audits. *See* Tex. Educ. Code Ann. § 33.083(b). Section 33.083(d) requires the UIL to provide annual financial reports to the executive and legislative branches of state government. *See id.* § 33.083(d). Specifically:

> The [UIL] shall file annually with the governor and the presiding officer of each house of the legislature a complete and detailed written report accounting for all funds received and disbursed by the [UIL] during the preceding fiscal year. The form of the annual report and the reporting time are as provided by the General Appropriations Act.

*Id.* Section 33.084 of the education code creates an "interscholastic league advisory council," composed of members of the State Board of Education, the state legislature, the UIL legislative council, public school boards, and three members of the public. *See id.* § 33.084(a) (West 2006). This advisory council reviews UIL rules and makes recommendations regarding the rules to the governor, the legislature, the UIL legislative council, and the State Board of Education. *Id.* § 33.084(e).

Notably, the education code also grants the UIL rulemaking authority with respect to certain state education policies, as well as the authority to impose sanctions for noncompliance. *See id.* § 33.081(b) (West Supp. 2009) (providing that students enrolled in Texas school districts are subject to UIL rules regarding participation in extracurricular activities when under supervision of

9

school or district); *id.* § 33.081(c) (stating that students failing to meet "No Pass No Play" requirements shall be suspended from participation "or sanctioned by the school district or the [UIL]"); *id.* § 33.091(b), (d) (West Supp. 2009) (requiring UIL to adopt rules enforcing statutory scheme for preventing illegal steroid use by student athletes, including "rules for the annual administration of a steroid testing program"); *id.* § 33.203 (West Supp. 2009) (providing that failure to accurately and truthfully answer questions on form provided by UIL as condition for sports participation subjects signer of form "to penalties determined by the [UIL]"); *id.* § 33.206(c) (West Supp. 2009) (stating that school campus failing to comply with statutory safety requirements in conducting extracurricular activities "shall be subject to the range of penalties determined by the [UIL]"); *id.* § 33.209 (West Supp. 2009) (requiring UIL to incorporate statutory safety requirements into UIL constitution and rules); *see also id.* § 33.091(c) (requiring UIL to develop educational program for student athletes regarding health effects of steroid use); *id.* § 33.091(f) (authorizing UIL to increase membership fees to offset cost of implementing steroid-prevention program).

In addition to expressly authorizing the UIL to adopt and enforce rules for implementing state education policies, the legislature has also exercised a measure of authority over the rulemaking power of the UIL. When the legislature substantially revised the education code during the 1995 regular session, it included a sunset provision for all UIL rules adopted prior to the effective date of the new legislation, further indicating that the legislature considers the UIL's rulemaking power to be a public matter subject to legislative oversight. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, sec. 33.083, 1995 Tex. Gen. Laws 2207, 2348 ("Each rule of the [UIL]

10

adopted before September 1, 1995, expires August 31, 1996, unless readopted by the league and approved by the State Board of Education after September 1, 1995.").[6]

TASO argues that the UIL's rulemaking and enforcement authority over certain state education policies has no bearing on the issue of whether the UIL is a state agency subject to sovereign immunity because, according to TASO, the UIL's obligation to comply with the education code is no different from a gas station's obligations to comply with regulations promulgated by the Texas Commission on Environmental Quality. We disagree. A gas station, or any other private entity subject to state statutory or regulatory requirements, lacks the type of rulemaking power granted to the UIL under the education code. The UIL is expressly authorized—even required—to adopt rules enforcing state education policies, and is further authorized to assess sanctions for noncompliance. The scope and importance of the UIL's rulemaking power is reflected in the fact that the legislature has exerted sunset control over UIL rules, *see id.*, as well as the education code provision requiring that all UIL rules be approved by the commissioner of education, *see* Tex. Educ. Code Ann. § 33.083(b).

---

[6] In support of its position, TASO argues that during the 2003 legislative session, a single legislator, in an attempt to pass a bill that would abolish the UIL, argued before the House Committee on Public Education that the UIL does not legally exist, has no legislative oversight, and is not subject to sunset review. *See* Hearings on Tex. H.B. 580 Before the House Comm. on Pub. Educ., 78th Leg., R.S. (April 1, 2003) (statement of Rep. Joe Nixon). First, the statement of a single legislator does not determine legislative intent. *AT&T Commc'ns of Tex., L.P. v. Southwestern Bell Tel. Co.*, 136 S.W.3d 517, 529-30 (Tex. 2006). Second, the proposed bill was left pending in committee. Third, a legislative mandate of formal sunset review is not a prerequisite to governmental entity status. This Court, for example, is free from sunset review, as is The University of Texas System. *See* Sunset Advisory Commission, *Guide to the Sunset Process* 1 (Dec. 2009).

11

In *Alamo Workforce Development, Inc. v. Vann*, the court was presented with the question of whether a nonprofit corporation tasked with planning, overseeing, and evaluating the delivery of publicly funded workforce training and services was subject to sovereign immunity. 21 S.W.3d 428, 430 (Tex. App.—San Antonio 2000, no pet.). In reaching its conclusion that the workforce board was a government agency entitled to immunity, the court emphasized the fact that the board was charged with administration of state workforce development programs created by statute. *Id.* at 432-33. The court determined that because local workforce boards were contemplated by statute and acted as arms of the State in carrying out state workforce policies, they were governmental entities protected by sovereign immunity. *Id.*

Similarly, the UIL is required under the education code to act as an arm of the State in carrying out certain education policies. *See, e.g.*, Tex. Educ. Code Ann. §§ 33.081(c), .083, .091. The UIL also enjoys greater statutory recognition than the workforce board in *Vann*, given that it is expressly characterized by education code section 33.083 as a part of UT-Austin, which derives its authority directly from the Texas Constitution. *See* Tex. Const. art. VII, § 10; *see also Whitehead v. University of Tex. Health Sci. Ctr.*, 854 S.W.2d 175, 180 (Tex. App.—San Antonio 1993, no writ) (holding that where health science center was characterized by education code as part of University of Texas system, it was protected by sovereign immunity). While the UIL may not have specifically been created by statute, it derives its status and authority from state law. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(D).

We note also that federal courts have viewed the UIL as a state agency immune from antitrust liability and have considered actions of the UIL to be state action for constitutional purposes. *See Cornerstone Christian Schs. v. UIL*, 563 F.3d 127, 135-36 (5th Cir. 2009) (reviewing UIL rule

12

to determine whether it violated constitutional rights to free exercise of religion, due process, and equal protection); *Saenz*, 487 F.2d at 1027 (holding that UIL is governmental entity immune from antitrust liability); *Blue v. UIL*, 503 F. Supp. 1030, 1034 (N.D. Tex. 1980) (concluding that UIL rules "constitute state action for the purposes of the Fourteenth Amendment and Section 1983"); *see also Sullivan v. UIL*, 616 S.W.2d 170, 172 (Tex. 1981) ("All public schools are eligible for membership in the [UIL], and its conduct has been held to constitute state action."). *But see Payne*, 635 S.W.2d at 757 n.5 (citing *Blue* and noting that state action is "a different and far broader concept than the jurisdictional question before this court," in reference to question of whether UIL was state agency exempt from appeal-bond requirement). In *Saenz*, the Fifth Circuit stated that "the UIL clearly is imbued with ample characteristics to warrant the trial court's determination that the organization is an agency of the State of Texas," and therefore immune from antitrust liability, citing, among other things, the facts that the UIL is "an integral part of [UT-Austin]" and that its "employees are employed and paid by the University." 487 F.2d at 1027-28.

We also find it significant that the education code includes a mandatory venue provision requiring that all suits against the UIL be filed in Travis County. *See* Tex. Educ. Code Ann. § 67.26 (West 2002) ("Venue for suits brought against the [UIL] or for suits involving the interpretation or enforcement of the rules or regulations of the [UIL] shall be in Travis County, Texas."). This provision is located in chapter 67 of the education code, entitled, "The University of Texas at Austin," further reflecting the legislature's intent to classify the UIL as part of UT-Austin. *See id.* §§ 67.01-.62 (West 2002 & Supp. 2009).[7] Notably, in addition to creating mandatory venue

---

[7] One might argue that the mandatory venue provision constitutes a waiver of immunity for suits against the UIL regarding the interpretation or enforcement of its rules or regulations. *But see Tooke v. City of Mexia*, 197 S.W.3d 325, 332-33 (Tex. 2006) (holding that waiver of immunity must

13

for suits against the UIL, chapter 67 identifies a number of other entities that, like the UIL, are component parts of UT-Austin. *See id.* §§ 67.23 (providing that Texas Memorial Museum is "an integral part of [UT-Austin]"); .51 (providing that McDonald Observatory is part of UT-Austin); .61 (providing that The University of Texas Marine Science Institute is part of UT-Austin). The mandatory venue provision applicable to the UIL is reminiscent of other venue provisions requiring or allowing suits against governmental entities to be brought in Travis County. *See generally* Tex. Civ. Prac. & Rem. Code Ann. § 15.014 (West 2002) (mandamus petition against head of department of state government must be filed in Travis County); Tex. Gov't Code Ann. § 554.007 (West 2004) (public employee of state governmental entity bringing whistleblower claim may sue in county where cause of action arose or Travis County); *id.* § 2001.038 (West 2008) (agency rule challenges under the Administrative Procedure Act must be brought in Travis County); *id.* § 2001.176 (West 2008) (petition for judicial review of state agency action in contested case proceeding must be filed in Travis County, unless otherwise provided by statute). In a 1994 opinion, the supreme court included the

---

be clear and unambiguous); *SE Ranch Holdings, Ltd. v. City of Del Rio*, No. 04-06-00640-CV, 2007 Tex. App. LEXIS 6939, at *8-9 (Tex. App.—San Antonio Aug. 29, 2007, pet. denied) (mem. op.) (holding that contract language providing mandatory venue for resolution of disputes did not represent clear and ambiguous waiver of immunity). The legislative history of section 67.26 states that the mandatory venue provision became necessary in light of the facts that after enactment of extracurricular eligibility rules, there were "numerous suits filed in state district courts regarding [UIL] eligibility rulings," and that these suits had "the effect of disrupting the planned extracurricular activities." *See* House Comm. on State Affairs, Bill Analysis, Tex. H.B. 63, 69th Leg., 3d C.S. (1986). This Court has previously been presented with cases in which students have challenged the interpretation or enforcement of a UIL rule in connection with a finding of ineligibility to participate in extracurricular activities. *See UIL v. Hatten*, No. 03-03-00691-CV, 2004 Tex. App. LEXIS 3372, at *1-2 (Tex. App.—Austin Apr. 15, 2004, no pet.) (mem. op.); *UIL v. Buchanan*, 848 S.W.2d 298, 300 (Tex. App.—Austin 1993, no writ). The present case, however, is not a challenge to the interpretation or enforcement of a UIL rule in the context of an eligibility ruling, but instead represents an ultra vires claim based on the UIL's plan to begin regulating sports officiants. The ultra vires nature of TASO's claims will be addressed more fully in our discussion of whether sovereign immunity was waived.

14

UIL's mandatory venue provision in a list of statutes that "minimiz[e] the litigation costs that taxpayers must bear by providing state agencies with a convenient venue in which to litigate." *K.D.F. v. Rex*, 878 S.W.2d 589, 595 & n.5 (Tex. 1994). Prior to the enactment of the mandatory venue provision, the San Antonio court of civil appeals upheld a transfer of venue to Travis County based on the trial court's implied finding that the UIL "is an agency of the State of Texas." *Lopez v. UIL*, No. 16275, 1980 Tex. App. LEXIS 3158, at *9-10 (Tex. Civ. App.—San Antonio Mar. 12, 1980, no writ) (not designated for publication).

The Open Records Division of the Attorney General's Office has issued opinions requiring the UIL to release its records under the Texas Public Information Act, which applies to public information that is collected, assembled, or maintained by or for a governmental body. *See* Tex. Att'y Gen. ORD-3753 (2003) ("[W]e conclude that the UIL must promptly release the information to the requestor."); Tex. Att'y Gen. ORD-3469 (1999) (ruling that "the signature at issue must be released" by UIL pursuant to Public Information Act); *see also* Tex. Gov't Code Ann. § 552.002(a) (West 2004) (defining "public information" for purposes of Act).

Finally, we address TASO's reliance on *UIL v. Green*, in which the Corpus Christi court of appeals held that the trial court had jurisdiction over a suit against the UIL and its officers for injunctive relief in connection with an eligibility ruling related to certain student-athletes. 583 S.W.2d 907, 909 (Tex. App.—Corpus Christi 1979, no writ). The court in *Green* never determined that the UIL was not a government entity subject to sovereign immunity. *See id.* Rather, it held that the State's consent to suit was not required because the UIL and its officers "were not sued in this action in their capacities as agents of the State" and because the plaintiffs "alleged loss of their civil and constitutional rights." *Id.* (citing *Maritine v. Board of Regents*, 578 S.W.2d 465, 473

15

(Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.) (holding that State's consent to suit was not required for claim against state agency for deprivation of vested property interest)). Without addressing the merits of the court's conclusion that the UIL was not sued in its capacity as an agent of the State, we note that *Green* does not stand for the proposition that the UIL is not a governmental entity, but in fact suggests the opposite, given the court's application of sovereign-immunity principles to an action brought against the UIL and its officers. *See id.*

While "[w]e are careful not to extend the blanket of sovereign immunity to every entity which at first blush exhibits the characteristics of a governmental unit," *Vann*, 21 S.W.3d at 433, we are dealing here with an entity that is required by statute to implement state education policies, granted rulemaking and enforcement power over such policies, subjected to extensive oversight from the legislative and executive branches, and statutorily classified as a component part of a governmental unit that was created by the Texas Constitution. For these reasons, we hold that the UIL is a governmental unit subject to sovereign immunity.[8] The UIL's first issue on appeal is sustained.[9]

---

[8] Because the UIL's state entity status is established as a matter of law by the relevant legal authorities, we need not address TASO's argument that the UIL improperly attempts to introduce evidence of its state entity status for the first time on appeal. *See generally Employees Ret. Sys. v. Putnam, LLC*, 294 S.W.3d 309, 323 (Tex. App.—Austin 2009, no pet.) (holding that trial court need not allow discovery before ruling on plea to jurisdiction where party's status as public entity was conclusively resolved as matter of law). In resolving the matters before us in this appeal, we do not consider any evidentiary materials that were not included in the trial court's record, including any materials that were produced for the first time on appeal and attached to appellate briefs.

[9] To the extent that TASO also argues that we do not have jurisdiction over this appeal because the UIL is not a governmental unit entitled to an interlocutory appeal from an order denying its plea to the jurisdiction, this argument fails as well. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008) (providing for interlocutory appeal from order granting or denying plea to jurisdiction by governmental unit as defined by section 101.001(3) of civil practice and remedies code); *see also id.* § 101.001(3) (West 2005). The UIL qualifies as a "governmental unit" under

16

*Waiver of Sovereign Immunity*

Because the UIL is entitled to sovereign immunity from suit, the trial court lacks jurisdiction over TASO's claims absent an express waiver of that immunity. *See Shumake*, 199 S.W.3d at 283. In its second issue on appeal, the UIL argues that the trial court erred in denying its plea to the jurisdiction because sovereign immunity has not been waived with respect to TASO's claims.

In order to determine whether immunity has been waived, we must first discuss the nature of TASO's claims. In its live pleading, TASO asserts causes of action for (1) "illegal attempt to exercise an unauthorized delegation of power," (2) "illegal occupation tax," and (3) "tortious interference with contractual relationships." With respect to its tort claim, TASO has not pleaded facts that fall under any waiver of immunity found in the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109. TASO concedes on appeal that sovereign immunity has not been waived for this claim, stating, "TASO has alleged a cause of action for tortious interference with a contract in the event the UIL is not a state entity." In light of our determination that the UIL is a state entity, we hold that TASO's tort claim is barred by sovereign immunity.

According to TASO's petition, its remaining claims for declaratory and injunctive relief are based on the allegation that the UIL's plan to begin regulating the sports officiating profession is "an illegal and improper usurpation of power" because "there exists <u>no</u> legislative

---

section 101.001(3) both as a part of UT-Austin, which derives its authority directly from the Texas Constitution, and because it derives its own status and authority from the education code. *See id.* § 101.001(3)(D) (defining "governmental unit" to include any "institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution").

17

enactment that would give the UIL <u>any</u> authority to oversee or regulate any trade or profession." (Emphasis in original.) TASO further alleges:

> [T]he UIL, without any grant of legislative or other authority, now seeks improperly and illegally to usurp and wholly take over the function of TASO, to tax and regulate its independent sports official members, and otherwise to act wholly outside the role of any authority vested in the UIL by the legislature or any other body.

TASO repeats similar allegations throughout its petition, stating that "[t]o the extent that the UIL maintains that it is a governmental agency or arm of the government, the legislature has not given it the power or authority to compel the payment of fees, or to tax, regulate, require registration, or act as the sole or exclusive trade association of an independent profession." Accordingly, TASO's claims for declaratory and injunctive relief represent ultra vires claims, alleging that the UIL has exceeded the scope of its authority by attempting to regulate and "tax" an independent profession.

A suit complaining that a government officer "acted without legal authority" and seeking to compel the official "to comply with statutory or constitutional provisions" is an ultra vires suit that is not protected by sovereign immunity. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Sovereign immunity does not act as a bar to ultra vires suits, not because immunity has been waived, but because "*ultra vires* suits do not attempt to exert control over the state—they attempt to reassert the control *of* the state." *Id.* "Stated another way, these suits do not seek to alter government policy but rather to enforce existing policy." *Id.*; *see also Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002) ("[S]uits to compel state officers to act within their official capacity do not attempt to subject the State to liability."). However, these ultra vires suits "must be brought against the state actors in their official capacity" because the

18

governmental entity itself remains immune from suit. *Heinrich*, 284 S.W.3d at 373. In the present case, TASO brought its ultra vires claims against the UIL rather than a state actor in his or her official capacity. Under the supreme court's holding in *Heinrich*, TASO's claims are barred by sovereign immunity.[10]

For the first time on appeal, TASO characterizes its suit as a "rule challenge" to the validity of the amendments to UIL Rule 1204.[11] Even viewing TASO's claims in this light, the fact remains that its challenge to Rule 1204 is based on an allegation that the UIL acted ultra vires in amending the rule to allow it to regulate and collect dues from sports officials. TASO's claims are, in substance, ultra vires claims. *See Texas Dep't of Ins. v. Reconveyance Servs.*, 306 S.W.3d 256, 258-59 (Tex. 2010) (determining party's claims were, "in substance," ultra vires claims because they were based on allegations that agency acted beyond its statutory authority); *see also City of Austin v. Austin Gas Light & Coal Co.*, 7 S.W. 200, 203 (Tex. 1887) (holding that city acted ultra vires in attempting to exercise taxing power not authorized by Texas Constitution). TASO, however, argues that sovereign immunity does not bar declaratory-judgment actions challenging the validity of legislative pronouncements when the relevant governmental entities must be made parties to such

---

[10] While TASO contends that sovereign immunity is waived under the Uniform Declaratory Judgments Act (UDJA), *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-37.011 (West 2008), the UDJA is not a general waiver of sovereign immunity and does not "extend a trial court's jurisdiction." *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). A declaratory-judgment action is merely a procedural device for deciding matters already within a trial court's subject-matter jurisdiction. *See Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).

[11] In its response to the UIL's plea to the jurisdiction, TASO describes its suit as "seeking a declaration that the UIL is without any vested authority to take over the profession of sports officiating, and that no body has delegated to it the authority to tax or regulate sports officials."

challenges. *See Heinrich*, 284 S.W.3d at 373 n.6 (citing Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b)). Section 37.006(b) of the UDJA provides that in "any proceeding that involves the validity of a municipal ordinance or franchise," the municipality must be made a party and that if a "statute, ordinance, or franchise is alleged to be unconstitutional," the attorney general is entitled to be heard. Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b). UIL Rule 1204, however, represents neither a "municipal ordinance or franchise," nor a "statute," and therefore is not subject to section 37.006(b). Further, institutions of higher education, such as UT-Austin, are not governed by the Administrative Procedure Act (APA), *see* Tex. Gov't Code Ann. § 2001.003(7)(E) (West 2008), and therefore are not subject to the APA's legislative grant of subject-matter jurisdiction for suits challenging agency rules. *See id.* § 2001.038 (allowing validity or applicability of agency rule to be determined in action for declaratory judgment and requiring that agency be made party to action); *see also Texas Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 903-04 (Tex. App.—Austin 2009, no pet.). Because there is no statute requiring that the UIL be made a party to suits challenging the validity of its rules, the UIL's immunity is not waived with respect to TASO's suit alleging that it exceeded its authority in amending Rule 1204. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 342-43 (Tex. 2006) (holding that immunity is not waived absent clear legislative intent to do so). TASO's challenge to Rule 1204 remains an ultra vires claim that must be brought against a state actor in his official capacity.[12]

---

[12] We express no opinion on the merits of TASO's ultra vires claims, including whether, in the event that TASO brought these claims against a government officer acting in an official capacity, it could "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

TASO argues that in the event this Court determines that its suit is barred by sovereign immunity, it should be afforded the opportunity to amend its pleadings and cure the jurisdictional defect by naming a state official as a party to suit. *See Miranda*, 133 S.W.3d at 226-27 (holding that if pleadings do not affirmatively negate jurisdiction, plaintiff should be afforded opportunity to amend). Under the circumstances presented here, however, the jurisdictional defect in TASO's pleadings cannot be cured by amendment because the sole defendant is immune from suit. The opportunity to amend pleadings to cure a jurisdictional defect has not been extended to the opportunity to substitute a state-entity defendant with a state actor acting in an official capacity in an ultra vires claim that would otherwise be barred by sovereign immunity. *See Reconveyance Servs.*, 306 S.W.3d at 259 (dismissing ultra vires suit for want of jurisdiction where state entity, rather than state official, was sole defendant).

Because TASO brought its ultra vires claims against the UIL rather than a state official acting in an official capacity, TASO's suit is barred by sovereign immunity and the trial court erred in denying the UIL's plea to the jurisdiction. We reverse the trial court's order and dismiss this suit for want of jurisdiction.

*Standing*

In light of our conclusion that TASO's suit is barred by sovereign immunity, we need not reach the UIL's third issue on appeal, in which it argues that the trial court lacked subject-matter jurisdiction over this suit because TASO did not have standing to bring its claims.

## CONCLUSION

We reverse the trial court's order denying the plea to the jurisdiction and dismiss this cause for want of jurisdiction.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Reversed and Dismissed

Filed:   August 27, 2010