# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-10-00377-CV

Catherine E. Scott-Nixon, Appellant

v.

Texas Higher Education Coordinating Board and the University of Texas at Arlington,
Appellees

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. D-1-GN-07-002477, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Catherine Scott-Nixon was admitted into a graduate program at the University of Texas at Arlington (the "University") and applied for a tuition exemption found in the education code. *See* Tex. Educ. Code Ann. § 54.203 (West Supp. 2011). The University denied her the exemption because it determined that the exemption does not apply to courses in the graduate program that admitted her. After being denied the exemption, Scott-Nixon sought administrative review of the University's decision with the Texas Higher Education Coordinating Board (the "Board"), but the Board agreed with the University's determination. In response to the Board's decision, Scott-Nixon filed a declaratory-judgment action against the University and the Board alleging that the University and the Board were misinterpreting or misapplying the provisions of the education code governing the tuition exemption. She also sought injunctive relief. Subsequent to Scott-Nixon filing suit, the University and the Board filed a joint plea to the jurisdiction and

motion for summary judgment.  Shortly thereafter, Scott-Nixon filed her own motion for summary judgment.  After reviewing the motions, the district court granted the University and the Board's plea to the jurisdiction as well as their motion for summary judgment and denied Scott-Nixon's motion. Scott-Nixon appeals the district court's rulings. We will affirm the district court's dismissal for lack of subject-matter jurisdiction.

## BACKGROUND

In 2007, Scott-Nixon was admitted into the Executive MBA Program at the University.  The Executive Program is one of four MBA masters programs offered by the University. According to the University, unlike the other three programs, the Executive Program is a self-funded program, meaning that the program is paid for by the tuition and fees collected from the students and does not receive any funding from the State.

Once she was admitted into the Executive Program, Scott-Nixon applied for what is commonly referred to as a Hazelwood exemption.  The exemption is codified in section 54.203 of the education code, which states that "[t]he governing board of each institution of higher learning shall exempt" honorably discharged service members who served in the military during particular periods of time "from the payment of tuition, dues, fees, and other required charges."  Tex. Educ. Code Ann. § 54.203.

After Scott-Nixon applied for the exemption, the University determined that although Scott-Nixon generally met the requirements for the exemption, the exemption cannot be applied to courses in the Executive Program.  Essentially, the University concluded that because the Executive Program is a self-funded, continuing-education program, the exemption may not be claimed by

2

students in the Executive Program. *See id.* § 54.545 (West Supp. 2011) (describing fees colleges may charge for continuing-education courses). The Board agreed with the University's determinations.

In response to the University's decision, Scott-Nixon filed a declaratory-judgment action against the University and the Board. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 2008) (allowing person whose rights are affected by statute to "have determined any question of construction or validity arising under the" statute). Specifically, Scott-Nixon sought a declaration that she qualifies for a Hazelwood "exemption of all tuition for all courses of the" Executive Program. Scott-Nixon also sought a permanent injunction preventing the University from charging her "tuition while she attends every class of every course of the Executive MBA Program." After Scott-Nixon filed suit, the Board and the University filed a plea to the jurisdiction asserting that Scott-Nixon did not have standing to file the suit and that Scott-Nixon's claims did not "establish a cause of action that confer[red] jurisdiction on the" district court. The plea also contained a motion for summary judgment alleging that Scott-Nixon was not entitled to the Hazelwood exception as a matter of law. In response, Scott-Nixon filed a joint response to the plea, response to the motion for summary judgment, and motion for summary judgment.[1]

---

[1] In her motion for summary judgment, Scott-Nixon requested that the district court issue three additional declarations that were not contained in her petition. First, Scott-Nixon sought a declaration that section 54.545 of the education code, which governs fees for continuing-education courses, does not pertain to the University's Executive Program. *See* Tex. Educ. Code Ann. § 54.545 (West Supp. 2011). Second, Scott-Nixon wanted a declaration that the University wrongfully denied her a Hazelwood exemption. Finally, Scott-Nixon requested a declaration that the Board "wrongfully refused to enforce" the provision providing the Hazelwood exemption "by agreeing with and approving [the University's] denial of" her Hazelwood exemption. However, as mentioned above, these declarations were not found in Scott-Nixon's petition. *See Murray v. O&A Express, Inc.*, 630 S.W.2d 633, 636 (Tex. 1982) (stating that purpose of pleadings is to define issues at trial); *see* Tex. R. Civ. P. 166a(c) (stating that summary judgment shall be rendered if "*pleadings*, admissions,

3

The district court granted the University and the Board's plea and motion for summary judgment and denied Scott-Nixon's motion for summary judgment.

**DISCUSSION**

Scott-Nixon raises two issues on appeal. In her first issue, Scott-Nixon argues that the district court erred by granting the Board's plea to the jurisdiction. In her second issue, Scott-Nixon contends that the district court erred by granting the University and the Board's motion for summary judgment and by denying hers.

During oral argument and in post-submission briefing, the University and the Board allege a new jurisdictional argument that was not contained in the Board's plea to the jurisdiction. *See University of Houston v. Barth*, 313 S.W.3d 817, 818 (Tex. 2010) (per curiam) (explaining that subject matter jurisdiction may be raised for first time on appeal). Specifically, the University and the Board urge that Scott-Nixon's suit is barred because Scott-Nixon is alleging an ultra vires cause of action but failed to name as defendants government officials acting in their official capacity. As support for this assertion, the University and the Board refer to various supreme court cases, including *Texas Department of Insurance v. Reconveyance Services, Inc.* and *City of El Paso v. Heinrich*. 306 S.W.3d 256 (Tex. 2010); 284 S.W.3d 366 (Tex. 2009) (respectively).

In *Heinrich*, the widow of a slain police officer filed a declaratory-judgment action against the City of El Paso seeking declaratory relief as well as the issuance of an injunction.

---

affidavits, stipulations of the parties, and authenticated or certified public records . . . show that . . . there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law" (emphasis added)). Even assuming that the three additional declaratory requests were properly before the district court, we would conclude that the jurisdictional defect ultimately barring consideration of the declaration requested in Scott-Nixon's petition would also have prevented the district court from properly addressing the declarations requested in her motion for summary judgment.

4

284 S.W.3d at 369.  When considering whether the widow's claims were barred by governmental immunity, the supreme court determined that "while governmental immunity generally bars suits for retrospective monetary relief, it does not preclude prospective injunctive remedies in official-capacity suits against government actors who violate statutory or constitutional provisions." *Id.* at 368-69; *see also Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (explaining that political subdivisions of State, including cities, are entitled to immunity similar to sovereign immunity that is called governmental immunity).  However, the court also concluded that "governmental entities themselves—as opposed to their officers in their official capacity—remain immune from suit." *Heinrich*, 284 S.W.3d at 372-73; *see Texans Uniting for Reform & Freedom v. Saenz*, 319 S.W.3d 914, 920 (Tex. App.—Austin 2010, no pet.) (explaining that if suit seeking declaratory or prospective injunctive relief is not filed against government officials, suit implicates "sovereign immunity because it seeks to control state action").

Stated differently, for claims that seek to restrain actions that allegedly violate or exceed authority under a statute but do not challenge the validity of the statute, the suit "cannot be brought against the state, which retains immunity, but must be brought against the state actors in their official capacity." *Heinrich*, 284 S.W.3d at 373 & n.6; *see Saenz*, 319 S.W.3d at 920 (explaining that ultra vires suits bind State through its agent and may seek prospective injunctive or declaratory relief to restrain agent from violating statutory or constitutional provisions); *Mr. W. Fireworks, Inc. v. Comal County*, No. 03-06-00638-CV, 2010 Tex. App. LEXIS 2384, at *9 (Tex. App.—Austin Mar. 31, 2010, no pet.) (mem. op.) (explaining that ultra vires claims are not barred "because the claim alleges not that a governmental officer erred in exercising his or her

5

discretion, but rather that the officer acted without legal authority or failed to perform a purely ministerial act").

The supreme court applied this distinction in another recent case. *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628 (Tex. 2010). In that case, various parties interested in the final payments of a winning lottery ticket filed a declaratory-judgment action against the Lottery Commission seeking, among other things, a declaration invalidating the government code provision prohibiting prize winners from assigning their final two payments. *Id.* at 633. On appeal, the supreme court concluded that because the claim did not address a government officer's actions and instead only challenged the statute, it was "not an *ultra vires* claim to which a government officer should have been made a party." *Id.* at 635.

In *Reconveyance*, the supreme court also expounded upon what qualifies as an ultra vires suit. In that case, Reconveyance filed a declaratory-judgment action asserting that the Department of Insurance (the "Department") "acted beyond its statutory authority in attempting to prevent Reconveyance from offering its services through title agencies." 306 S.W.3d at 258. In determining whether the case should be dismissed, the court concluded that although Reconveyance did not specifically state that the Department acted ultra vires, the requested declarations were "in substance *ultra vires* claims." *Id.* at 258-59. Moreover, because Reconveyance only sued the Department and did not sue "Department officials acting in their official capacities," the court determined that the Department retained "its sovereign immunity" and dismissed the suit for want of jurisdiction. *Id.* at 259.

In light of these cases, the University and the Board argue that the district court's dismissal of Scott-Nixon's suit for want of jurisdiction should be upheld because she is pursuing an

6

ultra vires claim but failed to name any state officials in her lawsuit. Scott-Nixon, on the other hand, urges that the failure to name government officials in her suit is not a jurisdictional defect under the circumstances of this case. Specifically, she asserts that unlike the plaintiffs in cases like *Reconveyance*, she has not requested relief "involving **solely** *ultra vires* actions." On the contrary, she argues that unlike the plaintiffs in those other cases, she has requested a declaration regarding "the construction of an ambiguous statute." *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a). Accordingly, she insists that the district court's jurisdictional ruling should not be upheld on the basis asserted by the University and the Board.

Although Scott-Nixon does not use the phrase "ultra vires" in her petition, the relief that she ultimately seeks—compelling a state agency to comply with what she asserts is a statutory requirement—distinguishes hers as an ultra vires claim. In her petition, Scott-Nixon does not challenge the validity of any of the statutes at issue. To the contrary, she contends that the Hazelwood exemption contained in section 54.203 of the education code is effective, that she qualifies for the exemption, and that the education code does not authorize the University or the Board to deny "an exemption of tuition for the Executive MBA Degree Program." In addition, Scott-Nixon sought injunctive relief restraining the University and the Board from denying her the exemption from tuition. In other words, although the declaration sought is written in terms of whether Scott-Nixon qualifies for the statutory exemption, such relief, at most, would be incidental to her ultimate remedy of compelling the University and the Board to act within her view of the law. Hers is thus an ultra vires claim. *See Heinrich*, 284 S.W.3d at 372 (explaining that suits seeking to force compliance with statutory provision fall within ultra vires exception to sovereign immunity).

7

Because Scott-Nixon was pursuing an ultra vires claim, she was required to bring the suit "against the state actors in their official capacity." *Id.* at 373. However, Scott-Nixon only filed suit against the University and the Board. For that reason, her suit is barred by sovereign immunity. *See Reconveyance*, 306 S.W.3d at 259; *Heinrich*, 284 S.W.3d at 373. Moreover, although plaintiffs are sometimes given an opportunity to replead their claims when their petitions do not establish jurisdiction, *see State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007), we have previously determined that the supreme court has not extended "the opportunity to amend pleadings to cure a jurisdictional defect . . . to the opportunity to substitute a state-entity defendant with a state actor acting in an official capacity in an ultra vires claim that would otherwise be barred by sovereign immunity," *University Interscholastic League v. Southwest Officials Ass'n, Inc.*, 319 S.W.3d 952, 965 (Tex. App.—Austin 2010, no pet.); *see Reconveyance*, 306 S.W.3d at 259 (dismissing ultra vires suit for want of jurisdiction where state entity, rather than state official, was sole defendant); *see also Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004) (stating that if "the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend").

In light of the preceding, we conclude that the district court did not have subject matter jurisdiction over Scott-Nixon's declaratory action. Consequently, we affirm the district court's dismissal for want of subject-matter jurisdiction and need not consider Scott-Nixon's other arguments on appeal.

**CONCLUSION**

Having determined that the district court did not have jurisdiction over this case, we affirm the district court's dismissal of Scott-Nixon's suit for want of jurisdiction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: May 4, 2012